UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| IBRAHIM ABDULLAHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00440-JDL |
| | ) | |
| TIME WARNER CABLE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING TIME WARNER CABLE'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING SLANDER *PER SE* CLAIM**

Ibrahim Abdullahi was employed by Time Warner Cable from May 2008 until he was terminated in March 2012. In this action, filed originally in the Maine Superior Court and removed to this court, Abdullahi seeks money damages asserting racial discrimination in violation of the Maine Human Rights Act, unlawful retaliation in violation of the Maine Human Rights Act, and slander per se. ECF No. 24 at 7-8. Time Warner Cable has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) regarding Abdullahi's slander per se claim, as amended. ECF No. 11.

As developed at oral argument held on June 30, 2014, Abdullahi's slander per se claim is based on speech that is the subject of paragraphs 44, 45, and 46 of the amended complaint. ECF No. 24 at 6. Paragraph 44 asserts: "On the morning of March 21, 2013, [Danielle] Watkins contacted Scott Tyler to inform him that Plaintiff had not mailed out the equipment and that his email was thus false." *Id.*

1

Paragraph 45 of the amended complaint states, among other things, that "Watkins repeated her accusation that Plaintiff had not mailed out the equipment and thus his email was false." *Id.* Paragraph 46 of the amended complaint asserts:

> As a result of Watkins' statement, the group concluded that Plaintiff's email amounted to a falsification of a company document, with TWC accusing Plaintiff of "falsifying a business document." "It was a statement that was made by Time Warner." (Tyler dep. 50:19-51:2, attached as Ex. 1)[.]

*Id.* at 6-7. Distilled to its essence, the question presented by Time Warner Cable's motion is whether Watkins's statement that Plaintiff's email was "false" was slanderous per se.

It is well-established that "any charge of dishonesty against an individual, in connection with his business, whereby his character in such business may be injuriously affected, is actionable." *Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1992). In *Chapman v. Gannett*, 171 A. 397, 398 (Me. 1934), the Law Court applied the following rule of construction to determine whether a statement is slanderous per se:

> In determining whether a given publication is libelous, the language thereof must be taken in its ordinary significance and must be construed in the light of what might reasonably have been understood therefrom by the persons who read it. The question is how would persons of ordinary intelligence understand the language. The published article alone must be construed, stripped of innuendo, insinuation, colloquium, and explanatory circumstances. In interpreting the language, it is not a question of the intent of the speaker, or author, or even of the understanding of the plaintiff, but of the understanding of those to whom the words are addressed and of the natural and probable effect of the words upon them. A person is presumed to intend the natural consequences of his acts and defamation consists solely in the effect produced upon the minds of

> third parties. If the language is plain and free from ambiguity, it is solely a question for the Court whether it is actionable.

*Id.* (internal quotations and citations omitted). Applying this standard in *Picard v. Brennan*, 307 A.2d 833, 835 (Me. 1973), the Law Court concluded that stating that a plaintiff "had been dismissed from his former employ rather than voluntarily resigning" was not slanderous per se because, as the court explained, "an employee may be discharged for any one of a multitude of reasons unrelated to his honesty, integrity or occupational skill, or indeed for no reason at all."

The statement at issue here—that an email authored by the plaintiff was "false" — was not slanderous per se. Stripped of any additional explanatory or contextual information, the statement can be reasonably understood by people of ordinary intelligence to mean that Abdullahi's email was either untrue or intentionally untrue. *See* Merriam-Webster's Collegiate Dictionary, 11th ed., at 451 (defining "false" as including "**1:** not genuine . . . **2a:** intentionally untrue . . . **2b:** adjusted or made so as meaning to deceive . . . **3:** not true[.]"); Black's Law Dictionary, 7th ed. (defining "false" as meaning "**1.** Untrue . . . . **2.** Deceitful; lying . . . ."). While the latter meaning could give rise to a slanderous statement if the statement is proven false, the former does not.

This conclusion is not altered by the added fact that, as alleged in paragraph 46 of the amended complaint, a "group" of Time Warner Cable employees subsequently concluded, based on Watkins's statement, that Abdullahi had "falsifi[ed] a company document." A person hearing Watkins's statement would

need to consider it in relation to the relevant "innuendo, insinuation, colloquium, and explanatory circumstances," *Chapman*, *id*., to conclude that not only was Abdullahi's email false, it was intentionally falsified.

Accordingly, Time Warner Cable's Motion for Judgment on the Pleadings as to Count III: Slander Per Se of the Amendment Complaint is GRANTED.

It is so ORDERED.

**DATED THIS 8TH DAY OF JULY, 2014**

                                      **/s/ Jon D. Levy**
                                      **JON D. LEVY**
                                      **UNITED STATES DISTRICT JUDGE**